**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**BILLINGS DIVISION**

**FILED**

DEC 0 2 2014

Clerk, U.S. District Court
District Of Montana
Helena

| | |
|---|---|
| BENJAMIN KARL SMITH, | |
| Plaintiff, | Cause No. CV 13-107-SEH-CSO |
| vs. | |
| CITY OF BILLINGS, BILLINGS POLICE DEPT., CHIEF ST. JOHN, and OFFICER MORRISON, | **ORDER** |
| Defendants. | |

United States Magistrate Judge Carolyn Ostby entered Findings and

Recommendations to Defendants' Motion for Summary Judgment on September 5,

2014. (Doc. 41.) Defendants filed objections, in part, to the Findings and

Recommendations on September 19, 2014. (Doc. 42.) Specifically, Officer Grant

Morrison ("Morrison") objected to recommendations related to the

constitutionality of his conduct in the stop and arrest of Plaintiff Benjamin Karl

Smith ("Smith") for a concealed weapon and possession of methamphetamine, and

that qualified immunity be denied. Plaintiff Smith did not file objections.

1

Findings and recommendation to which objection is made are reviewed *de novo*. 28 U.S.C. § 636(b)(1).

The Court found no error in the Magistrate Judge's Findings and Recommendations as to Defendants City of Billings, Billings Police Department, and Chief St. John's Motions for Summary Judgment and as to Defendants' Motion for Summary Judgment on Plaintiff's claims asserted under Mont. Code Ann. § 42-2-117. All were adopted in full. (Doc. 43.)

A hearing on Defendants' objections to the portion of the Magistrate's Findings and Recommendations on Morrison's motion for summary judgment related to alleged Fourth Amendment violations was held on October 21, 2014. (Doc. 44.) Defendants appeared through counsel. Plaintiff appeared *pro se*.

Upon *de novo* review of the record, I find Morrison's Motion for Summary Judgment should be granted. As a matter of law and based upon the undisputed facts, Morrison did not violate the Fourth Amendment. Moreover, he is entitled to qualified immunity for his actions in relationship to the stop and arrest of Plaintiff.

## FACTUAL BACKGROUND[1]

On December 23, 2012, Defendant Morrison was patrolling the 400 block of South 34th Street in Billings, Montana, as part of his routine patrol. (Doc. 35-1, ¶

---

[1] Facts taken from the record.

1.) At approximately 9:45 p.m., he observed a blue 2002 Acura sedan parked on the shoulder of the road with its lights off. (Doc. 35-1, ¶ 2.)

He saw two occupants inside the vehicle moving their heads up and down. (Doc. 35-1, ¶ 3.) The vehicle did not appear to be running. (Doc. 35-1, ¶ 2.) It was a cold winter night, making it unusual for individuals to be sitting in a vehicle without it running. (Doc. 35-1, ¶ 3.)

Morrison made a mental note of the vehicle and continued on with his patrol. (Doc. 35-1, ¶ 4.) At approximately 10:17 p.m., he returned to the area. (Doc. 35-1, ¶ 5.) The Acura was still parked in the same spot. (Doc. 35-1, ¶ 5.) As Morrison drove past, it appeared to him that the vehicle was still not running. He once again saw two occupants inside the vehicle. (Doc. 35-1, ¶ 5.)

Morrison decided to check on the welfare of the occupants because it was below freezing, dark, and the vehicle had been stationary for over thirty minutes. (Doc. 35-1, ¶ 6.) He also had concerns about the fact that drug crimes were common in the area where the vehicle was parked and that such crimes were often associated with weapons. (Doc. 35-1, ¶ 13.)

Morrison pulled in behind the vehicle without activating any emergency lights. (Doc. 35-1, ¶ 7.) From this point forward, the sequence of events was captured on his video recording system. (Video filed conventionally, *see* Doc. 37.)

Morrison activated a spotlight on his vehicle and directed it towards the parked vehicle. Before he could get out of his patrol car or make any contact with the occupants, the occupant on the driver's side of the vehicle (later identified as Smith) exited. As Smith did so, he looked down and appeared to reach towards something on the floor of the driver's side. He then approached the officer's vehicle and did not stop until he was at the very front of it. Morrison made several observations before he was able to exit and begin his approach to Smith, who at that point was holding objects in both hands. Morrison noted to Smith that the vehicle had been "there for awhile" and asked if "everything [was] okay?" Smith proceeded to stand directly in front of Morrison's patrol car holding the objects. He was wearing an untucked heavy shirt over another article of clothing. At this point, Morrison could be heard but was not yet visible on the video. Smith's statements are largely inaudible, but he can seen gesturing with both arms and hands and shifting his stance. Smith still had objects in both hands as he waved them around.

The following dialogue then ensued: Morrison asked: "Who's your friend?" Smith responded, "Jacie." Morrison asked: "Do you have any ID on you?" Smith makes a response that is inaudible. Morrison then asked, "How long have you been here now?" Smith gave a long explanation which cannot be heard. Morrison then said, "I don't know who you are; I've never met you before." Smith

4

made some additional comments which again could not be heard. Morrison then told Smith to "stay right there" before reporting in to dispatch. Morrison then shut his car door and said, "The reason I'm out here I saw you guys pull up for awhile ago and you have just been sitting in your car the whole time." Smith replied, "No, no, no, I just really pulled up here right now–that was another car, a green one that looks like this one, but it was green . . . I just got here like 5 minutes ago." Morrison then noted: "Someone shining a laser pointer around here . . ." Smith responded that he has one on the tip of his keys. Morrison then said, "So you don't have your ID on you?" Smith responded that he did not have any identification. Morrison approached Smith as he was talking and pulled out his notebook. He asked Smith for his name and date of birth. At this point, the passenger was still in the vehicle.

Morrison then asked Smith, "Do you have anything sharp or illegal on you right now." Smith replied, "Not that I know of." Morrison then indicated that he was going to need to pat Smith down for his safety. Smith nodded, appearing to agree, moved forward and put his hands up.

Before Morrison began the protective frisk of Smith, Smith said "my knife is right here on my side." Smith then directed Morrison to a weapon. Morrison pulled a knife from its sheath which was attached to Smith's belt. Morrison recognized the knife had a concealed blade in excess of four inches.

Morrison then advised Smith that he was being placed under arrest for carrying a concealed weapon. He secured Smith in handcuffs and placed him in the back of his patrol car.

During the course of the arrest, Officer Dave Raschkow ("Raschkow") arrived on scene to assist. Morrison, along with Raschkow, then checked on the female occupant in the passenger seat of the vehicle and spoke to her.

Morrison then walked to the open door on the driver's side of Smith's vehicle. As he looked inside to engage the occupant in the passenger seat, he saw a plastic bag containing what appeared to be methamphetamine in plain view on the driver side of the center console. (Doc. 35-1, ¶ 18.) Morrison then returned to his patrol vehicle and advised Smith that illegal drugs were in his car. (Doc. 35-1, ¶ 20.) Morrison read Smith his Miranda rights. (Doc. 35-1, ¶ 20.) Smith was then driven to the Yellowstone County Detention Facility. (Doc. 35-1, ¶ 22.)

Smith later pled no contest to a separate felony robbery which had occurred on December 18, 2012, just a few days before Morrison's interaction with Smith. (*See* Docs. 11, 15.) As part of a plea bargain, charges relating to the December 23, 2012, stop were dismissed. Smith is now serving a 12 year prison sentence for the felony robbery.

## ANALYSIS

This Court has determined as a matter of law that Smith cannot prove that a constitutional violation occurred during the events relating to the stop, protective frisk, and arrest for possession of an illegal weapon and methamphetamine. Morrison likewise is entitled to qualified immunity. The Magistrate's Recommendations are not accepted. Morrison is entitled to summary judgment.

### I.    Alleged Constitutional Violation

Smith's Complaint alleges Morrison violated the Fourth Amendment to the U.S. Constitution, and Montana's corresponding protections against unreasonable searches and seizures, for illegally arresting him. (Doc. 1-1.) Magistrate Ostby's Findings took no issue with the arrest itself and this Court, too, finds nothing inappropriate about Morrison's decision to arrest Smith. The video clearly shows Morrison had probable cause to arrest Smith once the concealed knife, a violation of Mont. Code Ann. § 45-8-316, was disclosed to Morrison. Smith also does not dispute the existence of methamphetamine in his vehicle in plain view.

The initial stop and questioning of Smith were lawful. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). Magistrate Ostby's Findings and

Recommendations concerning the initial interaction between Morrison and Smith are adopted in full.

The question before this Court on Defendants' Objections, however, is whether Morrison had articulable suspicion to engage in a brief and limited protective frisk of Smith. Magistrate Ostby concluded that there were genuine issues of material fact whether Morrison had both "reasonable suspicion that Smith was engaged in criminal activity sufficient to justify the seizure and reasonable suspicion that Smith was carrying a weapon to justify the pat-down search." (Doc. 41 at 16.) This Court disagrees. The material facts, as depicted on the video, as well as the uncontroverted testimony of Morrison, support his reasonable suspicion that a protective frisk was necessary. Smith first stated and then disclosed, before any search was undertaken, that he was carrying a weapon. The search was clearly justified for both the officer's own safety and to ensure he could conduct his investigation safely.

To justify an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968), an officer must point to specific, articulable facts that gave rise to a reasonable suspicion that the suspect was or could be engaged in criminal activity. *Id.* at 21. Further, "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," he may conduct a limited protective search

8

for concealed weapons. *Terry*, 392 U.S. at 24. The "totality of the circumstances" are to examined to determine whether the police officer had "a particularized and objective basis for suspecting legal wrongdoing." *See United States v. Arvizu*, 534 U.S. 266, 273 (2002)(internal quotation marks omitted).

I find reasonable, undisputed, specific and articulable facts to support a finding that Morrison had reasonable suspicion to conduct the protective frisk of Smith. Morrison had witnessed a car parked in the same location for over thirty minutes on a cold night. The vehicle had two occupants inside. The car did not appear to be running despite the freezing temperature outside. It was parked in a crime area, known for drugs and weapons. These factors, coupled with Morrison's observations of the peculiar activity are enough to give rise to reasonable suspicion that a drug crime may have been occurring. This suspicion was solidified by Smith's conduct of getting out of his car and approaching Morrison without being asked to do so, holding multiple objects in both of his hands, shining a laser pointer, not having any ID, and providing long and inconsistent explanations to simple questions from the officer. These factors, in conjunction with Morrison's initial observations and his experience as a law enforcement officer, provided ample support for a protective frisk to insure that he could continue his investigation in a safe and secure manner.

Morrison specifically asked Smith why he was parked in that location for an extended period of time. Smith told Morrison he had only been in that spot for a short time but was somehow aware that another car, which apparently looked identical to his, was parked in the same spot the first time Morrison passed by. While the existence of this "other" car may be in dispute, it nonetheless was reasonable for Morrison to be concerned with Smith's answer under the circumstances. Smith's denial would have come across as a direct lie to any reasonable observer. In fact, it is incongruous that Smith would have known of this "other vehicle" if he had not, in fact, been parked in that same location for the period of time Morrison knew him to be. In addition, Smith almost immediately made direct accusations that Morrison somehow "knowing [knew] him" – again a fact reasonably raising Morrison's suspicions about Smith's intentions towards or perception of him. Given the totality of the circumstances, including Morrison's justified suspicion of possible criminal activity, Smith's laser pointer and other objects in his hands, Smith's untucked heavy shirt, Smith's arm gestures and shifting stance, and his inability to provide honest answers to simple questions, Morrison was justified in conducting a brief protective frisk of Smith before proceeding with his investigation. If the above facts were not enough, the record is without dispute as to the fact that Smith disclosed that he had an illegally

concealed weapon in his possession and on his person before any search was
undertaken.

That the totality of the circumstances do not support any constitutional right
violation by Morrison is underscored by the reasoning of the Ninth Circuit in
factually analogous cases. *U.S. v. Mattarolo*, 209 F.3d 1153 (9th Cir. 2000); *U.S.
v. Davis*, 530 F.3d 1069 (9th Cir. 2008); *United States v. $109,179 in U.S.
Currency*, 228 F.3d 1080 (9th Cir. 2000). Moreover, and as noted above, it was
Smith himself who disclosed the presence of the unlawful concealed weapon on
his person after having directly denied such just moments earlier. The conduct of
the officer was justified, necessary, and appropriate. Smith has no justifiable basis
to complain.

## II.   Qualified Immunity

In resolving the question of qualified immunity at the summary judgment
stage, the Supreme Court has instructed courts to engage in a two-pronged inquiry.
The first prong asks whether the facts, taken in the light most favorable to Smith,
show that the officer's conduct violated the Fourth Amendment's prohibition
against unreasonable seizures. For the second prong, the Court must ask whether
the right in question was "clearly established" at the time of the violation. *See
Tolan v. Cotton*, 134 S.Ct. 1861, 1865-66 (2014)(citations omitted).

The facts do not clearly establish clearly, or at all, a violation of the Fourth Amendment by Morrison. He is entitled to the protections of qualified immunity.

ORDERED:

1.    Defendant Officer Morrison's Motion for Summary Judgment (Doc. 33) is GRANTED.

2.    The Clerk shall enter judgment accordingly.

DATED this __2nd__ day of December, 2014.

SAM E. HADDON
United States District Judge